## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICHAEL W. DUGGAN                                    *
500 Chapel Harbor Drive
Pittsburgh, Pennsylvania 15238                       *

                                                     *

       *Plaintiff*                                *

       v.                                      *

DANIEL M. BERINSTEIN, M.D.                           *
5454 Wisconsin Avenue, Suite 1540                    *
Chevy Chase, Maryland  20815
                                                     *
and
                                                     *
THE RETINA GROUP OF WASHINGTON,
  P.C.                                          *
8150 Leesburg Pike, Suite 903
Vienna, Virginia  22180                              *

*Serve on:*                                          *

The Prentice-Hall Corporation System, M             *
7 St. Paul Street, Suite 1660
Baltimore, Maryland  21202                           *

and                                                  *

LILIA G. BANZON, M.D.                                *
The Friendship Ambulatory Care Center
5550 Friendship Boulevard                            *
Chevy Chase, Maryland  20815
                                                     *
and
                                                     *
THE FRIENDSHIP AMBULATORY
  SURGERY CENTER, P.C.                          *
5550 Friendship Boulevard
Chevy Chase, Maryland  20815                         *

                                                     *

| | |
|---|---|
| *Serve on:* | * |
| Ron Conheim | |
| 5550 Friendship Boulevard | * |
| Chevy Chase, Maryland  20815 | |
| | * |
| and | |
| | * |
| SUBURBAN HOSPITAL, INC. | |
| 8600 Old Georgetown Road | * |
| Bethesda, Maryland  20814 | |
| | * |
| *Serve on:* | |
| S. Allan Adelman, Esquire | * |
| 180 Admiral Cochrane Drive | |
| Annapolis, Maryland  21401 | * |
| | |
| and | * |
| | |
| Suburban Hospital Healthcare System, Inc. | * |
| 8600 Old Georgetown Road | |
| Bethesda, Maryland  20814 | * |
| | |
| *Serve on:* | * |
| S. Allan Adelman, Esquire | |
| 180 Admiral Cochrane Drive | * |
| Annapolis, Maryland  21401 | |
| | * |
| | |
| *Defendants* | * |

*************

## COMPLAINT

Michael W. Duggan, Plaintiff, by his attorneys Gary E. Dumer, Jr., J. Michael Harrison, Wilson K. Barnes, III and Dumer, Harrison & Barnes, P.A., sues Daniel M. Berinstein, M.D., The Retina Group of Washington, P.C., Lilia G. Banzon, M.D., The Friendship Ambulatory Care Center, P.C., Suburban Hospital, Inc., and Suburban Hospital Healthcare System, Inc., Defendants:

## INTRODUCTION

1.      This matter concerns a tort claim.  Plaintiff Michael W. Duggan asserts that defendants Daniel Berinstein, M.D., The Retina Group of Washington, P.C., Lilia G. Banzon, M.D., The Friendship Ambulatory Surgery Center, P.C., Suburban Hospital, Inc., and Suburban Hospital Healthcare System, Inc. committed medical malpractice causing Michael Duggan to suffer painful and permanent medical injuries.

## JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

2.      Plaintiff Michael W. Duggan is a resident of Pennsylvania.

3.      Defendant Daniel Berinstein, M.D. practices medicine in the State of Maryland.

4.      Defendant The Retina Group of Washington, P.C. is a Virginia Corporation which regularly conducts business in the State of Maryland.

5.      Defendant Lilia G. Banzon, M.D. practices medicine in the State of Maryland.

6.      Defendant The Friendship Ambulatory Surgery Center, P.C. is a Maryland corporation with its principal place of business in the State of Maryland.

7.      Defendant Suburban Hospital, Inc. is a Maryland corporation with its principal place of business in the State of Maryland.

8.      Defendant Suburban Hospital Healthcare System, Inc. is a Maryland corporation with its principal place of business in the State of Maryland.

9.      Complete diversity of citizenship exits between plaintiff and the defendants.

10.      The amount in controversy exceeds $75,000.00

11.     On November 22, 2011, a Statement of Claim was filed with the Maryland Health Claims Alternative Dispute Resolution Office as required under Maryland law, and arbitration of the claim was waived by Plaintiff pursuant to Maryland Courts and Judicial Proceedings Article §3-2A-06B.

12.     Accordingly, the United States District Court For the District of Maryland has subject matter jurisdiction over this tort action pursuant to 28 U.S.C. §1332.

## COUNT I – NEGLIGENCE

13.     At all times of which the Plaintiff complains, the Defendant Daniel M. Berinstein, M.D. (hereinafter referred to as "Berinstein") represented to Plaintiff Michael Duggan and the public that he possessed the degree of skill, knowledge and ability possessed by reasonably competent medical practitioners, practicing under the same or similar circumstances as those involving the Plaintiff.

14.     Plaintiff alleges that the Defendant Berinstein herein owed to the Plaintiff the duty to exercise the degree of care, skill and judgment expected of a competent medical practitioner acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, surgery and/or treatment to correct such conditions without injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and the effects of such treatment, and adjustment of the course of treatment in response to such ongoing surveillance and evaluation, all of which the Defendant failed to do.

15.     Defendant Berinstein was negligent in that he failed to employ appropriate treatment, surgery, tests and/or procedures, failed to carefully and thoroughly evaluate the

Plaintiff's condition, failed to properly and appropriately diagnose the Plaintiff's condition,

failed to thoroughly evaluate the effects and results of any tests and/or procedures performed,

failed to properly evaluate the effects of chosen treatment, failed to adjust the Plaintiff's

treatment in response to appropriate evaluation of the effects of treatment, failed to properly

monitor the course of Plaintiff's condition and treatment, failed to employ adequate and proper

diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition,

and was otherwise negligent.

16.     Plaintiff alleges that The Retina Group of Washington, P.C. (hereinafter "Retina

Group"), through its agents, servants and employees, owed to the Plaintiff a duty to exercise a

degree of care, skill and judgment expected of a competent medical Corporation acting in the

same or similar circumstances, which duty included the performance of adequate and proper

diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition,

careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or

treatment to correct such conditions without inflicting injury upon the Plaintiff, continuous

evaluation of the Plaintiff's condition and effects of such treatment, and the adjustment of the

course of treatment in response to ongoing surveillance and evaluation, all of which the

Defendant failed to do.

17.     Defendant Retina Group, through its agents, servants and/or employees, was

negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to

carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the

effects and results of any tests, treatments and/or procedures performed, failed to adjust the

Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to

properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate

and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's

condition, failed to diagnose the Plaintiff's condition and was otherwise negligent. At all times

referred to herein, the Defendant Berinstein acted for himself and as a duly authorized agent

and/or employee of the Defendant Retina Group, acting within the scope of his authority.

18.     At all times of which the Plaintiff complains, the Defendant Lilia G. Banzon,

M.D. (hereinafter referred to as "Banzon") represented to Plaintiff and the public that she

possessed the degree of skill, knowledge and ability possessed by reasonably competent medical

practitioners, practicing under the same or similar circumstances as those involving the Plaintiff.

19.     The Plaintiff alleges that the Defendant Banzon herein owed to the Plaintiff the

duty to exercise the degree of care, skill and judgment expected of a competent medical

practitioner acting in the same or similar circumstances, which duty included the performance of

adequate and proper diagnostic tests and procedures to determine the nature and severity of the

Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures,

surgery and/or treatment to correct such conditions without injury upon the Plaintiff, continuous

evaluation of the Plaintiff's condition and the effects of such treatment, and adjustment of the

course of treatment in response to such ongoing surveillance and evaluation, all of which the

Defendant failed to do.

20.     Defendant Banzon was negligent in that she failed to employ appropriate

treatment, surgery, tests and/or procedures, failed to carefully and thoroughly evaluate the

Plaintiff's condition, failed to properly and appropriately diagnose the Plaintiff's condition,

failed to thoroughly evaluate the effects and results of any tests and/or procedures performed,

failed to properly evaluate the effects of chosen treatment, failed to adjust the Plaintiff's

treatment in response to appropriate evaluation of the effects of treatment, failed to properly

monitor the course of Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, and was otherwise negligent.

21.     Plaintiff alleges that the Defendant The Friendship Ambulatory Care Center, P.C. (hereinafter referred to as "Friendship"), through its agents, servants and employees, owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical Corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation, all of which the Defendant failed to do.

22.     Defendant Friendship, through its agents, servants and/or employees, was negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests, treatments and/or procedures performed, failed to adjust the Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, failed to diagnose the Plaintiff condition and was otherwise negligent. At all times referred to herein, the Defendant Banzon acted for herself and as a duly authorized agent and/or employee of the Defendant Friendship, acting within the scope of her authority.

23.     Plaintiff alleges that the Defendant Suburban Hospital Inc. (hereinafter referred to as "Suburban"), through its agents, servants and employees, owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical Corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation, all of which the Defendant failed to do.

24.     Defendant Suburban, through its agents, servants and/or employees, was negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests, treatments and/or procedures performed, failed to adjust the Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, failed to diagnose the Plaintiff's condition and was otherwise negligent.

25.     Plaintiff alleges that the Defendant Suburban Hospital Healthcare System, Inc. (hereinafter referred to as "Suburban Healthcare"), through its agents, servants and employees, owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical Corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature

8

and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation, all of which the Defendant failed to do.

26.    Defendant Suburban Healthcare, through its agents, servants and/or employees, was negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests, treatments and/or procedures performed, failed to adjust the Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, failed to diagnose the Plaintiff's condition and was otherwise negligent.

27.    As the direct and proximate result of the negligence of these Defendants and each of them, the Plaintiff suffered severe physical pain and emotional anguish.

28.    In 2008, Michael W. Duggan, aged 56 years old and a diabetic, experienced decreased visual acuity from diabetic retinopathy.  Mr. Duggan also had a complex medical history including cardiac disease, congestive heart failure, hypertension, and renal insufficiency. In March and April of 2008, Mr. Duggan underwent 2-vessel stent placement performed in two separate hospitalizations.  In June 2008, he underwent another stent placement to the left anterior descending artery.

29.    In 2008, Mr. Duggan came under the care and treatment of Daniel Berinstein, M.D., a retina specialist with The Retina Group of Washington, P.C.  Mr. Duggan had recently

worked as a senior engineer for a defense contractor in Fairfax, Virginia. He was hoping to

return to work as an engineer after his swollen blood vessels were treated. Mr. Duggan was also

in the process of becoming a candidate for a kidney transplant.

30.     On July 28, 2008, Mr. Duggan underwent a vitrectomy for proliferative diabetic

retinopathy performed by Dr. Berinstein, M.D. at The Friendship Ambulatory Surgery Center

("Surgery Center"). On August 25, 2008, Mr. Duggan underwent another vitrectomy by Dr.

Berinstein at the Surgery Center. On October 20, 2008, Mr. Duggan underwent a third

procedure by Dr. Berinstein at the Surgery Center. During the procedure, Mr. Duggan

experienced severe bradycardia. He received 1 mg Atropine. A preoperative examination

performed on October 16, 2008 by Mr. Duggan's primary care physician revealed an abnormal

ECG.

31.     On November 24, 2008, Mr. Duggan underwent a scheduled vitrectomy by Dr.

Berinstein. Dr. Berinstein delegated the performance of the retrobulbar block to Lila Banzon,

M.D., a non-ophthalmologist.

32.     Mr. Duggan did not receive a new preoperative evaluation or ECG before the

November 24, 2008 procedure. The October 16, 2008 report from Mr. Duggan's primary care

physician, which was used for preoperative clearance for the October 20 procedure, was used

again instead of a new preoperative evaluation being performed.

33.     At 7:20 a.m., Dr. Banzon administered IV sedation and a 7cc retrobulbar injection

comprised of 2% Lidocaine and 0.75% Marcaine, too large of a volume of local anesthetic.

34.     Dr. Banzon injected the local anesthetic into the optic nerve sheath or an orbital

vein, which caused Mr. Duggan to suffer respiratory arrest.

35.     At 7:34 a.m., Mr. Duggan stopped breathing.  He received 0.5 mg atropine, but

continued to be apneic and became bradycardic.  Mr. Duggan was intubated.  At 7:40 a.m., 1.0

Epinephrine was administered.  At 7:41 a.m., Mr. Duggan became pulseless.  The ambulance and

Suburban Hospital records indicate that Mr. Duggan experienced ventricular fibrillation.

Automated External Defibrillator (AED) pads were placed, but no shock was advised or

performed.  At 7:45 a.m., 911 was called.  Dr. Berinstein, Dr. Banzon, and/or the nurses and

technicians at the Surgery Center performed cardiopulmonary resuscitation for approximately 10

minutes.  They also administered 50 cc bicarb and 100 mg Lidocaine.  EMS personnel arrived at

7:58 a.m.  They transported Mr. Duggan to the emergency room at nearby Suburban Hospital.

36.     Mr. Duggan arrived at Suburban sedated and not responsive.  He was admitted to

the ICU service for ventilator management as well as further evaluation of his mental status and

cardiac evaluation.  Mr. Duggan received hypothermic protocols to help minimize trauma and to

restore neurologic function.  He was also placed in soft wrist restraints.

37.     On November 27, 2008, Mr. Duggan was weaned from mechanical ventilator

support and extubated.  On November 28, 2008, at 1:15 a.m., his restraints were discontinued.

However, a nursing note by Nurse Brenda Wagner at 6:00 p.m. indicates that Mr. Duggan

remained forgetful, had poor eyesight and coordination and was "reoriented frequently."  At

11:00 p.m., Nurse Michelle Livernois noted that Mr. Duggan had periods of forgetfulness and

memory deficits.

38.     On November 29, 2008 at 2:40 a.m., Nurse Livernois found Mr. Duggan out of

bed sitting on the floor.  She noted two small skin tears on each knee indicating that Mr. Duggan

fell.  At 11:47 a.m., Nurse Wagner recorded that Mr. Duggan was a high risk for falls.  At 5:45

p.m., Nurse Wagner noted that Mr. Duggan was awaiting transfer from the ICU to the medical

floor, but also noted that Mr. Duggan remained unsteady with poor coordination.   Around 6:00 p.m., Mr. Duggan was transferred from the ICU to the medical floor.   Nurse Rhoonie Balram received the patient from the ICU and recorded that the patient was alert to person, place, and time, but also noted that the patient was forgetful.

39.   There is no indication that the ICU nursing staff informed the medical floor nursing staff prior to or at the time of transfer from the ICU to the medical floor about Mr. Duggan's prior fall.   In fact, Nurse Balram performed a systems assessment at 6:32 p.m. after receiving Mr. Duggan from the ICU where she recorded a "No" under the section "History of Falls in the Last 6 Months" despite Mr. Duggan's fall less than 24 hours earlier in the hospital. At 9:00 p.m., Nurse Regina Masina also performed a systems assessment and recorded a "No" under the section "History of Falls in the Last 6 Months."

40.   A progress note at midnight on November 30, 2008 indicates that a physician was called to evaluate the patient for mental status changes and delirium.   There is no documentation from the nursing staff caring for Mr. Duggan describing his delirium or mental status changes, or why they felt compelled to call a physician to evaluate Mr. Duggan.

41.   Around 3:00 a.m., Mr. Duggan fell striking his head and sustaining a right frontal cerebral hematoma.   He was returned to the ICU.

42.   At 8:30 a.m., a Critical Care Physician notes that Mr. Duggan was obviously more confused after his fall and that his confusion and neurologic injury were clearly secondary to the frontal lobe contusion and closed head injury.

43.   Mr. Duggan developed difficulty swallowing and required placement of a gastro feeding tube on December 9, 2008.   During this procedure, Mr. Duggan experienced a second

cardiac baseline event.  Due to his overall condition and the likelihood of future procedures, a

combination pacemaker/defibrillator was permanently installed on December 12, 2008.

44.     On December 23, 2008, Mr. Duggan was discharged from Suburban Hospital and

transported to and admitted to HealthSouth Hamarville Rehabilitation Hospital in Pittsburgh,

Pennsylvania to undergo neurological, speech, and rehabilitative therapy.  Unfortunately, during

his rehabilitation, Mr. Duggan experienced elevated kidney functions and a severe increase in

body fluids and was admitted to the ICU at St. Margaret's Hospital in Pittsburgh, Pennsylvania

where he received dialysis treatments.

45.     Eventually, Mr. Duggan was discharged from HealthSouth Hamarville on

February 4, 2009 and began living at Schenley Gardens Assisted Living Center in Pittsburgh,

Pennsylvania.  He continues with his dialysis treatments and is not qualified for a kidney

transplant due to injuries.

46.     On April, 2012, Mr. Duggan underwent an amputation below on his left leg below

the knee at Allegheny General Hospital in Pittsburgh, Pennsylvania.

47.     Mr. Duggan is totally disabled and suffers from neurologic injury and cognitive

impairment.  He also requires dialysis treatment three times per week and is not a candidate for

kidney transplant due to his injuries.

48.     The standard of care applicable to Defendant Berinstein in this case is what a

reasonably competent ophthalmologist would do in the same or similar circumstances. Defendant

Berinstein breached the standard of care in his care and treatment of Plaintiff. Defendant

Berinstein breached the standard of care by, among other things, selecting an outpatient surgical

center remote from a hospital as the surgical venue when Mr. Duggan had a clearly documented

and extensive cardiac history, delegating the performance of the retrobulbar block to a non-

ophthalmologist, failing to provide proper Advanced Cardiovascular Life Support (ACLS) to Mr.

Duggan, failing to properly use an automated external defibrillator when Mr. Duggan

experienced ventricular fibrillation, and failing to ensure that adequate life-saving devices and

clinical interventions were in place and functioning before the surgery on November 24, 2008.

49.     As a result of the Defendant Berinstein's failure to adhere to the standards of care,

Mr. Duggan had surgery performed on an outpatient basis at the Surgery Center when the

procedure was not indicated to be performed on an outpatient basis.  If the procedure was to be

performed at all, it should have been performed at a hospital where emergency measures for

cardiopulmonary arrest can be delivered in a more expedient fashion.  Unfortunately, Mr.

Duggan coded during the procedure at the Surgery Center which lacked the necessary equipment

and/or personnel to revive Mr. Duggan in a timely manner resulting in brain injury to Mr.

Duggan.

50.     As a result of the Defendant Berinstein's failure to adhere to standards of care,

Mr. Duggan received too large a volume of anesthetic which was injected into his optic nerve

sheath or an orbital vein which caused Mr. Duggan to experience respiratory arrest and the

subsequent cardiac and medical events resulting in permanent injuries.

51.     The standard of care applicable to Defendant Banzon in this case is what a

reasonably competent anesthesiologist would do in the same or similar circumstances. Defendant

Banzon breached the standard of care in her care and treatment of Plaintiff. Dr. Banzon breached

the standard of care in her care and treatment of Mr. Duggan on November 24, 2008.  Dr.

Banzon did not adequately review Mr. Duggan's chart which would have revealed Mr. Duggan's

complex cardiac history and recent episode of bradycardia during the October 20, 2008

procedure.  Dr. Banzon should have also recognized that the preoperative history and physical in

the chart was identical to the history and physical performed on October 16, 2008 before the

October 20, 2008 procedure indicating that a new preoperative physical examination was not

performed before the November 24 procedure.   In addition, Dr. Banzon should have recognized

that the most recent ECG in the patient's chart was abnormal.  Furthermore, Dr. Banzon was

required by standards of care to take a comprehensive history from Mr. Duggan prior to the onset

of the procedure, which would have alerted her to Mr. Duggan's complicated cardiac problems

and the inherent risk associated with the anesthesia utilized during the procedure.  Mr. Duggan

had a significant cardiac history, including congestive heart failure and recent cardiac stent

placement, warranting an ASA (American Society of Anesthesiologists) rating of 4 which

requires surgery to be performed in a hospital setting as opposed to an outpatient surgical center.

52.     The standard of care required Dr. Banzon to use an appropriate volume of

anesthetic.  Dr. Banzon used seven ml of local anesthetic, which was too large a volume.

53.     The standard of care required Dr. Banzon to avoid injecting the local anesthetic

into Mr. Duggan's nerve sheath or orbital vein.

54.     In addition, if Mr. Duggan experienced ventricular fibrillation as indicated in the

Maryland Ambulance Transport Record and Suburban Hospital records, then the standard of care

required Dr. Banzon to shock Mr. Duggan no matter what the machine advised.

55.     As a result of the Dr. Banzon's failure to adhere to standards of care, Mr. Duggan

received too large of a volume of anesthetic which was injected into his optic nerve sheath or an

orbital vein which caused Mr. Duggan to experience respiratory arrest and the subsequent

cardiac and medical events resulting in permanent injuries.

56.     As a result of Dr. Banzon's failure to adhere to the standard of care, Mr. Duggan

had surgery performed on an outpatient basis at the Surgery Center when the procedure was not

indicated to be performed on an outpatient basis. If the procedure was to be performed at all, it should have been performed at a hospital where emergency measures for cardiopulmonary arrest can be delivered in a more expedient fashion. Unfortunately, Mr. Duggan coded during the procedure at the Surgery Center which lacked the necessary equipment and/or personnel to revive Mr. Duggan in a timely manner resulting in brain injury to Mr. Duggan.

57.     The standard of care applicable to Defendant Friendship in this case is what a reasonably competent surgical center, by and through its agents, servants and employees, would do in the same or similar circumstances. Defendant Friendship breached the standard of care in its care and treatment of Claimant. Defendant Friendship breached the standard of care by, among other things, failing to provide proper Advanced Cardiovascular Life Support (ACLS) to Mr. Duggan, failing to properly use an automated external defibrillator when Mr. Duggan experienced ventricular fibrillation, and failing to ensure that adequate life-saving devices and clinical interventions were in place and functioning before the surgery on November 24, 2008.

58.     As a result of Defendant Friendship's failure to adhere to the standards of care, Mr. Duggan did not receive appropriate treatment for his ventricular fibrillation resulting in permanent injuries.

59.     The standard of care applicable to Defendant Suburban in this case is what a reasonably competent hospital, by and through its agents, servants and employees, including but not limited to its nursing staff and physicians, would do in the same or similar circumstances. The nursing staff at Suburban Hospital, including, but not limited to Brenda Wagner, RN, Michelle Livernois, RN, Rhoonie Balram, RN, and Regina Masina, RN, breached the applicable standard of nursing care in their care and treatment of Mr. Duggan. The nursing staff failed to recognize Mr. Duggan's risk for falls after he was transferred to the medical floor from the ICU.

Mr. Duggan was noted to have confusion, forgetfulness, and poor coordination in the ICU indicating that he was a high risk for falls.  More importantly, Mr. Duggan in fact fell in the ICU on November 29, 2008 at 2:40 a.m. less than 24 hours prior to transfer to the medical floor.  The standard of care required the ICU nursing staff caring for Mr. Duggan to inform the medical floor nursing staff about Mr. Duggan's fall in the ICU prior to or at the time of Mr. Duggan's transfer to the medical floor.

60.     On the medical floor, the standard of care required more fall precaution measures to be implemented in light of Mr. Duggan's prior fall and noted confusion, forgetfulness, poor coordination, changes in mental status, and delirium.

61.     The nursing staff caring for Mr. Duggan on the medical floor should have implemented additional fall precaution measures such as using a technician or other sitter to monitor Mr. Duggan, using a bed alarm, or moving Mr. Duggan close to the nursing station where he could have been observed by the nursing staff on the medical floor.

62.     As a result of the Defendant Suburban's failure to adhere to the standards of care, Mr. Duggan fell and sustained a closed head injury resulting in permanent neurologic damage and other injuries.

63.     The standard of care applicable to Defendant Suburban Healthcare in this case is what a reasonably competent hospital, by and through its agents, servants and employees, including but not limited to its nursing staff and physicians, would do in the same or similar circumstances. Defendant Suburban Healthcare breached the standard of care in its care and treatment of Claimant. Defendant Suburban Healthcare breached the standard of care by, among other things, failing to recognize Mr. Duggan's risk for fall after her was transferred to the medical floor, failing to properly restrain Mr. Duggan, failing to implement policies and

protocols designed to prevent a patient from falling, failing to follow policies and protocols designed to prevent a patient from falling, and failing to properly monitor and evaluate Mr. Duggan's neurologic state and condition.

64.     As a result of the defendant Suburban Healthcare's failure to adhere to the standards of care, Mr. Duggan fell and sustained a closed head injury resulting in permanent neurologic damage and other injuries.

65.     As a result of his injuries, Mr. Duggan has endured severe pain and has been caused to endure unnecessary surgeries and additional treatment.  Mr. Duggan is severely limited in his ability to walk and perform many of the activities of his daily life.

66.     It is alleged that Plaintiff Michael Duggan has in the past, is presently, and will in the future continue to suffer excruciating physical pain, emotional anguish as well as fear, anxiety, humiliation, and embarrassment over his condition. As a direct and proximate result of the negligence complained of, it is alleged that Plaintiff will be forced to go through life without the ability to engage in the normal life activities of a person of like age and physical condition. Additionally, it is alleged that the Plaintiff is unable to seek and hold gainful employment in the manner that he was prior to negligent acts of the defendants, and as a result of the injuries inflicted through the negligence of these defendants.

67.     It is alleged that the Plaintiff has in the past, is presently, and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, nursing, custodial and other losses for which claim is made. He has lost his state of physical and mental well-being, is unable to engage in activities that other adults take for granted on a daily basis, and will suffer with this disability for the rest of his life.

68.     The Plaintiff refers to the negligence of these defendants and each of them as a proximate cause of all of the damages which the Plaintiff suffers, with the Plaintiff being in no way contributorily negligent.

69.     The negligence complained of occurred in Montgomery County, Maryland. Venue is claimed in the United States District Court for the District of Maryland. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

## COUNT II – LACK OF INFORMED CONSENT

70.     Plaintiff incorporates herein the facts and allegations contained in Count I and the previous paragraphs 1 through 69.

71.     Defendant Berinstein had a duty to fully inform Mr. Duggan of the quantum of information that would be deemed material by Mr. Duggan when deciding whether or not to undergo the vitrectomy and concomitant retrobulbar block on November 24, 2008.

72.     Defendant Berinstein had a duty to explain to and warn Mr. Duggan about the material risks or inherent dangers in the performance of the vitrectomy using a retrobulbar anesthetic injection due to Mr. Duggan's extensive cardiac history.  The risk of respiratory arrest following retrobulbar anesthetic injection is well known to the ophthalmic profession and well documented in the medical literature.

73.     Defendant Berinstein breached his duty to Mr. Duggan by not informing Mr. Duggan that the surgery and concomitant anesthesia to be used presented known risks to Mr. Duggan's life and health.  In addition, Dr. Berinstein did not discuss alternate methods of local anesthesia with Mr. Duggan.

74.     There is no documentation that Dr. Berinstein informed Mr. Duggan that the surgery and concomitant anesthesia presented known, catastrophic risks to Mr. Duggan's health and life, or that he discussed with Mr. Duggan alternate methods of local anesthesia.

75.     There was no emergency need for the vitrectomy and concomitant retrobulbar block to be performed on November 24, 2008.

76.     Plaintiff would not have consented to the treatment proposed by Dr. Berinstein at the Surgery Center had Dr. Berinstein provided Plaintiff with a full disclosure of the material risks of the procedure.

77.     Plaintiff consented to the performance of the vitrectomy and concomitant use of the retrobulbar block at the Surgery Center on November 24, 2008 without being fully informed of the material risks to his life and health by Dr. Berinstein.

78.     Plaintiff's respiratory arrest and the subsequent cardiac and medical events were caused by performance of the retrobulbar block on November 24, 2008.

79.     Dr. Berinstein's negligence was a proximate cause of all of the damages which the Plaintiff suffers, with the Plaintiff being in no way contributorily negligent.

80.     The negligence complained of occurred in Montgomery County, Maryland. Venue is claimed in the United States District Court for the District of Maryland. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

81.     Plaintiff demands a jury trial.

_____/s/_____
Gary E. Dumer, Jr. (#23757)

_____/s/_____
J. Michael Harrison (#24739)

Wilson K. Barnes, III (#26256)
Dumer, Harrison & Barnes, P.A.
31 E. Lee Street
Bel Air, Maryland 21014
(443) 602-3939
wbarnes@dhblawyers.com
Fax: 410 838-1017

Attorneys for Plaintiff Michael Duggan